| 4 | 537 |
| 54 LRA | 907 |

# THOMAS S. COOPER, WALTER STORM and JOHN C. SMITH, Appellants, Complainants,

## *vs.*

# ANDREW B. JACKSON, SALMON UPSON and ISAAC BASSETT, Appellees, Defendants.

### APPEAL IN EQUITY FROM THE CIRCUIT COURT OF KENOSHA COUNTY.

Delivery is essential to the validity of a deed.

What facts are necessary to constitute a good delivery of a deed of real estate, so as to vest the title.

It is essential to the legal operation of a deed that the grantee named therein assents to receive it, and there can be no delivery without such acceptance, but such acceptance need not be in person, it is sufficient if authorized, or approved by the grantee.

The delivery of a deed to the register of deeds by the grantor *for the use of the grantee* to be recorded, and the grantee's subsequent assent to the same, is equivalent to an actual delivery to the grantee.

A deed need not be delivered to the grantee in person; it is sufficient if it be delivered to a third person for the use and benefit of the grantee, whose acts in accepting the same are approved and ratified by the grantee.

Where upon agreement between the grantor and grantee in a deed, it is arranged that the former shall leave the deed with the register of deeds to be recorded, and he does so, and his acts in this behalf are ratified by the grantee, there is a good delivery.

THIS was a creditor's bill filed by the appellants against the appellees on the 8th day of January, 1855, in the Circuit Court of Kenosha county, to recover the equitable interests of Andrew B. Jackson, one of the defendants below. An injunction was issued by N. H. Joy, Esq., commissioner for Kenosha county, according to the prayer of the bill on the same day, until the further order of the court. On the 24th day of January, 1855, an order was made for the defendants, Jackson, Upson and Bassett, to answer the bill of complaint by the 3d day of March, 1855. On the 15th day of May, 1855, the defendant Salmon Upson filed his answer to said bill of complaint. On the 4th day of June, 1855, complainants filed their replications to the answer of Salmon Upson. On the 2d day of May, 1855, the bill of

complaint was taken as confessed against the defendant Andrew B. Jackson, and on the 5th day of May, 1855, against Isaac Bassett. On the 11th day of May, 1855, a receiver was appointed by the court as to the defendant Andrew B. Jackson.

On the 28th day of August, 1855, the defendant Salmon Upson by F. S. Lovell, his solicitor, filed a motion for the dissolution of the injunction as to the said Salmon Upson.

On the 29th day of August, an order was made by the court to dissolve the injunction as to the defendant Salmon Upson.

On the 13th day of September, the complainants entered their appeal from the order of said court, dissolving the injunction against Salmon Upson, and filed with the clerk their bond with sureties, in pursuance of the order of the court for said appeal.

The bill of complaint sets forth, that on the 2d day of October, 1854, the complainants had recovered a judgment in their favor in the Circuit Court for the county of Kenosha, against Andrew B. Jackson of $873.60 damages, and $13.87 costs of suit; that said judgment was duly docketed, and that thereupon on the 5th day of October, 1854, a writ of *fieri facias* had been issued, directed to the sheriff of Kenosha county, in which county the defendant Andrew B. Jackson then resided, commanding said sheriff to levy and collect the sums of money mentioned in said writ, out of the property and effects of said defendant; that said writ was delivered to the sheriff, who returned the same wholly unsatisfied.

The bill further alleges, that at the time of the filing of said bill, the said judgment was wholly unsatisfied and unpaid, and that the full amount thereof was then due.

The bill then states on information and belief, that the defendant Andrew B. Jackson was largely engaged in mercantile business, and that thereby divers persons became largely indebted to the said Andrew B. Jackson, and that at the time of filing the said bill of complaint, the defendant Jackson had debts due him for which he at that time held securities and evidences of indebtedness, to a large amount, and at any rate to an amount sufficient to pay a considerable, if not the whole amount of the said judgment against the said defendant, Andrew B. Jackson; also that the said Jackson is owner of, or beneficially interested

in some real estate in this or some other state, and in stocks, &c., (in the usual form) claiming a full discovery.

The bill further states, that on the 15th day of June, 1854, the defendant Jackson made his promissory note for $855.64, payable one day after date with interest, to the complainants, in the city of New York, with a warrant of attorney, to confess judgment. "That at the time he so delivered the same it was stipulated and agreed by and between your orators and the said Andrew B. Jackson, that the said Andrew B. Jackson was not in any way or manner to convey away, or in any way or manner to incumber his real estate in the state of Wisconsin, before judgment should be docketed on said promissory note under the said warrant of attorney, and that the said judgment was not to be docketed until the first day of October thereafter.

"And your orators further show unto this court, that on Saturday, the last day of September, A. D. 1854, the said Andrew B. Jackson saw the attorney of your orators, H. B. Towslee, of Kenosha, Wisconsin, in Kenosha city, and requested him to delay the perfecting judgment on said note and warrant of attorney, until he should have time to write to your orators at New York city, and receive a reply from them, consenting to postpone the entering up said judgment, for several weeks thereafter, but to which said H. B. Towslee expressly refused to accede; and thereupon on the said thirtieth day of September, 1854, the said Andrew B. Jackson, as grantor, as your orators have been informed and believe, made and executed a certain quit-claim deed, bearing date September 26th, A. D. 1854, to one Isaac Bassett as grantee, of Bristol, in the state of Connecticut, and one of the defendants in this suit, upon the consideration therein expressed, of seven hundred dollars, of the northeast quarter of the southeast quarter of section number nine in the town of Bristol, in the county of Kenosha, and also the north half of the southwest quarter of the southeast quarter of said section, in all being sixty acres; and on the said thirtieth day of September, A. D. 1854, he, the said Andrew B. Jackson, acknowledged the said deed, and he, the said Andrew B. Jackson, left it with the register of deeds of said county of Kenosha, on the day last aforesaid, to be recorded, and who did record the same at 5 o'clock in the afternoon of that day, in volume E of deeds, at page 422, as

your orators have been informed and believe; and which deed your orators pray the said Andrew B. Jackson and Isaac Bassett produce for inspection on the trial of this cause, and to which, and to the record thereof, your orators pray leave to refer, produce and prove as this court may direct, and they shall be advised.

"And your orators further show unto this court that they are informed and believe, that the witnesses who subscribed to the deed last aforesaid were S. Y. Brande and Sarah Brande, and that they affixed their signatures thereto as such witnesses on the said thirtieth day of September, 1854, in the city of Kenosha, and not at the time nor on the day said deed bears date; neither was Isaac Bassett, the grantee named in said deed, present when the said deed was executed and acknowledged, nor was he, said grantee, in the state of Wisconsin, at the time last aforesaid, as your orators believe and charge the truth so to be.

"And your orators further show unto this court that they are informed and believe, that after said Andrew B. Jackson had said interview with said H. B. Towslee, your orators' said attorney at Kenosha, on the said thirtieth day of September, 1854, he, the said Andrew B. Jackson, on the thirtieth day of September, 1854, and not before then, as grantor, made and executed a certain other quit-claim deed, bearing date the 25th day of September, 1854, to one Salmon Upson, as grantee, and a brother-in-law of said Andrew B. Jackson, residing in Bristol, in Kenosha county aforesaid; and one of the defendants in this suit, upon the consideration in said deed expressed, of three thousand dollars, of the following described lands and property to wit: Thirty acres off the west side of the east half of the southwest quarter of section number five, town of Bristol, Kenosha county. Also west half of the southwest quarter of section number five. Also west half of the northeast quarter of section number nine, also six acres off the west side of the east half of the northeast quarter of section number nine, being a strip twelve rods wide at north end, and running to a point at south end. Also southwest quarter of northeast quarter of section number five. Also twenty-eight acres off west side, southwest quarter of northeast quarter of section number five, bounded east by Des Plaines River, west by farm of O. A. Bas-

sett all in the town of Bristol, and on the said thirtieth day of September, 1854, S. Y. Brande and Sarah Brande, affixed their signatures to the said deed as subscribing witnesses thereto, and not before that day, and on the day last aforesaid, the said An- drew B. Jackson acknowledged the said deed, and the said Andrew B. Jackson at that time and place, left the said deed with the register of deeds of the county of Kenosha, to be re- corded; and who did record the same at 5 o'clock in the after- noon of that day in volume E of deeds, in pages 422 and 423, and which deed your orators pray that the said Andrew B. Jackson and Salmon Upson produce for inspection on the trial of this cause, and to which and to the record thereof your orators pray leave to refer, produce and prove as this court may direct and as they shall be advised.

"And your orators further show on information and belief, and charge the truth thereof so to be, that the said lands de- scribed, and intended to be conveyed by said two several deeds, were and still are of much greater value than the consideration therein expressed, that is to say of more than double such con- sideration.

"And your orators further show upon information and belief, and so charge the truth thereof to be, that the said deeds before mentioned were never delivered to the grantees respectively therein named before the recording thereof as aforesaid, nor have they yet been delivered, but that the making, executing, acknowledging and recording thereof was the voluntary act of the said Andrew B. Jackson, without the knowledge or consent of the said grantee, named in said several deeds, and your ora- tors charge that no valid or subsisting title, claim or interest of, in or to the lands in said deeds described and mentioned, has ever passed from said Andrew B. Jackson, the grantor therein, to said grantees or either of them, under and by virtue of the said deeds, but that the same are null and void, although the same still remain of record in said register's office, and apparently are good, valid and subsisting conveyances of the said lands to the said grantees, their heirs and assigns forever.

"And your orators further show, and state on information and belief, that on Monday, the second day of October, 1854, they caused to be perfected and docketed, the judgment upon said

promissory note, and warrant of attorney in the Circuit Court for the county of Kenosha, being the judgment first above in this your orators' bill of complaint set forth and mentioned, and that but for the said deeds and conveyances to the said Isaac Bassett and Salmon Upson, they would have been enabled to have collected the full amount of their said judgment upon the execution so issued as aforesaid, out of said lands mentioned in said deeds, but that in consequence of said deeds, records thereof as aforesaid, a cloud rests upon the rights and interest of the said Andrew B. Jackson therein, which tended to, and did hinder and still does hinder and prevent any moneys being made out of said lands, upon the said judgment.

" And your orators further show on information and belief, and charge the truth thereof so to be, that the said deeds were made with the intent to hinder, delay or defraud, your orators, then the creditors of the said Andrew B. Jackson, as aforesaid, of their said lawful suits, damages, debts and demands, and that said deeds have from thence hitherto and still do hinder and delay your orators from recovering the amount of their said judgment, or any part thereof, by due process of law out of the said lands so mentioned and specified in the said quit-claim deeds.

" And your orators further show on information and belief, that no consideration in fact passed between either the said Isaac Bassett or said Salmon Upson and said Andrew B. Jackson, at the time the said deeds to them severally bear date, or at any time since then, or that they severally ever paid to the said Andrew B. Jackson, the consideration money expressed in their said deeds severally, or any like sum, but that the said Isaac Bassett and Salmon Upson hold and cover up the said property and lands expressed in said deeds and other large amounts of property belonging in truth and in fact to the said Andrew B. Jackson, either real estate or on bonds, mortgages, or promissory notes or bank stock, or stock in some corporation or association, copartnership, or on accounts, claim, dues, demands or things in action or promises of value of some kind, nature or description ; and so it would appear if the said defendants should make a full, true and complete discovery of all and singular, the same, of the business or transactions between them, or either and each of them, and their several and respective rights, claims and interests there-

in, and their nature and kind, all of which your orators claim shall be discovered by the said defendants as fully and particularly as though they were herein fully and particularly interrogated item by item, paragraph by paragraph.

" And your orators further show, that they are informed and believe, that the said Andrew B. Jackson was in the actual possession and occupancy of the said several pieces and parcels of land mentioned and described in the said several deeds aforesaid, at the time of his, the said Andrew B. Jackson, making the said deeds before mentioned, and that he, the said Andrew B. Jackson, has ever since that time and now is, in the actual possession and occupancy of the same, receiving the rents, issues and profits of the same.

"And your orators further show on information and belief, that they have by their said attorney, repeatedly called upon the said Andrew B. Jackson and Salmon Upson, residents of the state of Wisconsin, and requested them to pay or apply, and appropriate sufficient of said lands and property, and thereby satisfy and discharge their said judgment, and which still is justly due and owing to them, and your orators well hoped that they would have complied with such, your orators' reasonable request. But now so it is," &c.

Then follows after the confederating clause, &c., the usual prayer in bills of this nature for a full discovery, that the said deeds, conveyances, &c., may be canceled, and the property, estate, &c., so charged, may be applied to the payment of the debt of the complainant, for an injunction, a receiver, and for general relief.

The bill was taken as confessed as against Jackson and Bassett.

On the 15th day of May, 1855, the defendant Upson filed his answer, and thereupon moved for a dissolution of the injunction.

After the formal part of the answer, admitting the judgment, &c., set out in the bill, it proceeds as follows:

" And this defendant further answering, says that on or about the 11th day of March, 1853, the said defendant, Andrew B. Jackson, with Mary Ann, his wife, executed to this defendant a certain indenture of mortgage of the following described premises situated in the town of Bristol, in the county of Kenosha, in the

state of Wisconsin, viz: The southwest quarter of the north-east quarter of section No. four (4) containing forty acres. Also, about twenty-eight acres off of the west side of the southeast quarter of said section four (4), commencing at the southwest corner of said quarter section, running thence east to the middle of the Des Plaines River, thence following the middle of said river northerly to the east and west quarter line of said section four (4), thence running west on said quarter line to the middle of the section, thence running south to the place of beginning. That said mortgage was executed to secure the payment of a certain promissory note, executed to the defendant by said defendant, Jackson, for the sum of five hundred and twenty-five dollars, which sum the said defendant, Jackson, then borrowed of this defendant. That said mortgage was duly recorded in the office of the register of deeds of said Kenosha county, on the 28th day of March, 1853, in volume C of mortgages, on pages 397 and 398, all of which will more fully appear by the said mortgage and the said note in the possession of this defendant, ready to be produced, and to which when produced, this defendant for greater certainty, prays leave to refer.

"And this defendant further answering, says that on or about the 25th day of September, 1854, the said defendant, Andrew B. Jackson, for the purpose of further securing this defendant for and on account of the indebtedness of the said defendant, Jackson, to this defendant, and for the purpose of securing this defendant, for and on account of certain liabilities which this defendant had theretofore incurred for said defendant, Jackson, by signing and indorsing divers promissory notes with said defendant, Jackson, and as security for him (which notes and liabilities are hereinafter more particularly set forth), executed to this defendant a certain deed of conveyance commonly called a quit-claim deed, of the following described lands situate and being in the town of Bristol, aforesaid, viz: Thirty acres off the west side of the east half of the southwest quarter of section No. four (4); also, the west half of the southwest quarter of said section No. four (4); also the west half of the northeast quarter of section No. nine (9); also, six acres off the west side of the east half of the northeast quarter of said section No. nine (9); being a strip twelve rods wide at the north end and running to a point at the south end;

also, the southwest quarter of the northeast quarter of section No. four (4), aforesaid; also, twenty-eight acres off the west side of the southwest quarter of the northeast quarter of said section four (4), it being bounded on the east by the Des Plaines River, and on the west by the farm of C. A. Bassett. That said conveyance was dated the 25th day of September, 1854, was recorded as is stated in said bill of complaint; that it was delivered to the register of deeds to be recorded by said defendant, Jackson; and that it was executed in pursuance of an agreement between said Jackson and this defendant, had and made prior to said 25th day of September, 1854.

" And this defendant further answering, says that the said defendant, Jackson, was justly indebted to this defendant at the time of the execution of said conveyance last-mentioned in addition to and over and above said promissory note hereinbefore mentioned, and which said mortgage was executed to secure, in about the sum of two hundred and fifty dollars and interest from 1st February, 1854.

"And this defendant further answering, says that at the time of the executing of said last-mentioned conveyance to him he was liable to divers persons for and on account of divers notes which this defendant had undersigned or indorsed for the said Jackson, amounting in all, to about the sum of four thousand eight hundred dollars, which notes and liabilities as near as this defendant can recollect, are as follows: a note executed by said Jackson and this defendant to George Watkins for four hundred dollars and interest at twelve per cent., dated about the first of June, 1850, the whole of which principal sum and about one year's interest was then due and still is unpaid and owing: Also, two promissory notes executed by said Jackson and this defendant to Robert P. Marr, for three hundred dollars each, one dated in November, 1853, and the other in June, 1854, which with the interest was then and still is owing and unpaid; also, another promissory note executed by said Jackson and this defendant in 1850, [now held by Lucy Perkins] for four hundred dollars, on which there was about three hundred and thirty dollars unpaid and owing; also, another promissory note executed by said Jackson and this defendant to said Lucy Perkins, for three hundred and seventy dollars, about the 8th of April, 1854, which

was and still is unpaid and owing; also, two other notes executed by said Jackson and this defendant to Alexander Freer, about June, 1854, each for the sum of five hundred dollars and interest, which was and still is owing and unpaid; also, two other notes executed by said Jackson and indorsed by this defendant to the City Bank of Kenosha, for two hundred and fifty dollars each, on which this defendant has since paid about three hundred and thirty dollars, the balance thereof still remains unpaid and owing; also, two notes made by said Jackson and this defendant to B. C. Adams, one for two hundred and fifty dollars and interest at twelve per cent., dated in November, 1852, the other for three hundred dollars and interest as aforesaid, dated in March, 1853, which notes with interest from January, 1854, then remained owing and unpaid; also, one note to Hale, Manney & Co., for one hundred dollars and interest from January, 1854, remained owing and unpaid; and another note given to Meeker & Herbert, signed by said Jackson and this defendant, upon which there was due at the time of the making said last-mentioned conveyance about four hundred and ninety dollars, and on which note the said Meeker & Herbert recovered judgment against said Jackson and this defendant in the said Kenosha Circuit Court at its last November term, for four hundred and ninety-three dollars and thirty-two cents damages and twenty-five dollars costs, which judgment, damages, costs and interest, has since been paid by this defendant; and this defendant further states that he has paid on account of incumbrances upon said lands so conveyed as aforesaid, since receiving said deed of conveyance, the sum of about one hundred and ninety dollars to E. S. & H. K. Elkins, on a judgment recovered by them, in the Kenosha Circuit Court, against said defendant, Jackson, and which was a lien upon said premises, and therefore this defendant claims and insists that the same might be allowed to him in this suit in his account against said Jackson.

"And this defendant further answering, says that on or about the 26th day of September, 1854, the said defendant, Andrew B. Jackson, executed a certain chattel mortgage, a copy of which is hereto annexed, marked "A," of certain chattels and personal property, which chattel mortgage was given and intended to secure the same liabilities and indebtedness, hereinbefore described

and set forth, which said chattel mortgage was duly filed with the town clerk of the said town of Bristol on the 28th day of September, 1854, and to which said chattel mortgage, or a duly certified copy thereof, this defendant for greater certainty prays leave to refer if necessary so to do.

"And this defendant further answering, says that about the month of September, 1854, the said Jackson assigned to this defendant bonds of the Kenosha and Beloit Railroad company for six hundred dollars, as security for the same uses and purposes hereinbefore stated.

"And this defendant further answering, expressly denies that the said conveyance and the said chattel mortgage, or either of them, or any conveyance or instrument in writing executed by the said defendant, Andrew B. Jackson, to this defendant, was made or obtained or received by this defendant for the purpose or with the intention to hinder, delay, or defraud the said complainant, or any creditor of the said Andrew B. Jackson, of his or their lawful suit, damages, debt, demand or judgment against the said Jackson; but this defendant expressly states and alleges that the said instruments and conveyances executed by the said defendant, Jackson, to this defendant, were executed for the sole purpose, and no other, of securing this defendant, his just account and claim against the said Jackson, and also for the liabilities hereinbefore mentioned, incurred by this defendant for the benefit of said Jackson. And this defendant further says that all of said liabilities hereinbefore stated to have been incurred by this defendant and the said Jackson were incurred for the sole use, benefit and behoof of the said defendant, Jackson. And that said conveyance hereinbefore specified was made for the purpose of enabling this defendant to sell and dispose of said lands and reimburse himself from time to time, or dispose of the same for the payment of said liabilities as might be required for his security.

"And this defendant further answering, admits that no money or pecuniary consideration passed from this defendant to said Andrew B. Jackson at the time of the date of said conveyance, or any other consideration than has been hereinbefore fully stated. And this defendant humbly insists that the said indebtedness of the said Andrew B. Jackson to this defendant, and the liability

incurred by this defendant for said Jackson, as hereinbefore stated, was and is a good, valid and sufficient consideration for the execution of said conveyance for the purposes aforesaid, and that a good, valid and sufficient title to the lands mentioned in said conveyance passed by virtue thereof to this defendant for the uses and purposes aforesaid.

" And this defendant further answering, expressly denies that he covers up the said lands and large amount of property or any property of the said Andrew B. Jackson of any kind or description, or that he holds any property of the said Jackson, except as security for the said debts and liabilities of the said Jackson to him. And this defendant admits that the said defendant, Andrew B. Jackson, still remains in the possession of a portion of the said lands hereinbefore described, but that this defendant is to receive the rents, issues and profits. And this defendant further answering, says that the said defendant, Jackson, had, previous to the docketing of said complainants' judgment, been in the mercantile business in said county of Kenosha; that this defendant does not know whether the said Jackson ever promised the said complainant he would not incumber the real estate he owned in Wisconsin.

" This defendant further states that he believes the cash value of the lands hereinbefore described and conveyed to him as aforesaid, to be about the sum of six thousand six hundred dollars, but said premises were then largely incumbered. And this defendant further states that he is particularly and fully acquainted with said lands, but that he never did view said lands for the purpose of purchasing the same prior to the execution of said conveyance.

" And this defendant further says that he was not present when said deed was executed, but he saw the same after it was drawn, and said Jackson agreed to execute the same, and deliver the same to the register immediately. And this defendant further says that there was no express agreement between the said Jackson and this defendant in relation to reconveying said premises to said Jackson, but it was well understood that said conveyance was made for the security of this defendant as hereinbefore stated. And that any and all residue after paying and discharging such debts, was the property of said Jackson, and

was to be returned him or such person or persons as represented him. And this defendant further admits that he did know at the time of the execution of said conveyance, that the said Andrew B. Jackson was considerably indebted to divers persons. And this defendant denies all fraud, combination and conspiracy charged in said bill of complaint," &c.

Upon filing the answer of the defendant Upson, a motion was made to dissolve the injunction as to him, which was granted by the court as before stated, from which order the complainants appealed.

*H. B. Towsley*, for the complainants.

*F. S. Lovell*, for the defendants.

*By the Court*, COLE, J. The correctness of the order of the Circuit Court, dissolving the injunction in this cause, depends very materially upon the question, as to whether or not, the deed given by Jackson to Upson, was a good and valid deed, at the time of entering up the judgment for the complainants.

The answer discloses a valuable consideration for the deed, and if there was a good delivery, the injunction was properly dissolved. The bill charges that the deed was executed and acknowledged by Jackson on the 30th of September, 1854, and by him left with the register of deeds of Kenosha county to be recorded. It is likewise charged in the bill, and insisted upon in argument, that the deed was made without the knowledge or consent of the grantee, Upson, and that as it was never delivered, no interest or title whatever in the lands, passed by it.

Upson in his answer, admits that he was not present when the deed was executed, but says that he saw the same after it was drawn, and that Jackson agreed to execute the deed and deliver it to the register immediately; that the conveyance was dated the 25th day of September, 1854, was recorded as is stated in the bill; that it was delivered to the register of deeds to be recorded by said Jackson, and that it was executed in pursuance of an agreement between Jackson and said Upson, had and made prior to said 25th day of September, 1854.

Upson claims that the deed is a good and valid deed, as against the judgment entered up in favor of the complainants on the 2d

of October, 1854; and whether it is or not, as already remarked, depends solely upon the question of delivery.

It must be admitted that delivery is essential to the validity of a deed; but the question is, what facts are necessary to constitute a good delivery, so as to vest the title. In *Thompson vs. Leach* (2 *Ventris R.* 198), it is stated that if an estate of freehold be conveyed to B. without his knowledge, it vests in him until his disclaimer by record. And it was established by the King's Bench, in the case of *Doe ex dem. Gamons vs. Knight* (5 *Barn. & Cress.* 671), in an elaborate opinion delivered by Bayley, J., "that when a party to any instrument seals it, and declares in the presence of a witness that he delivers it as his deed, but keeps it in his possession, and there is nothing to qualify that, or to show that the executing party did not intend it to operate immediately, except the keeping the deed in his hands, it is a valid and effectual delivery; and delivery to the party who is to take the deed, or to any person for his use, is not essential; and further, that delivery to a third person for the use of the party in whose favor the deed was executed, when the grantor parts with all control over the deed, makes the deed effectual from the instant of such delivery, although the person to whom the deed is so delivered be not the agent of the party for whose benefit the deed is made." That would seem also to be the case even where the delivery was to a third person for the use of the grantee, though such third person were not the agent of the grantee, and the grantee should not receive the deed, nor know of its existence until after the death of the grantor. 4 *Kent*, 456, *note A*.

In 1 *Shep. Touch.* 57, 58, it is stated, "that a deed may be delivered to any stranger for and in the behalf, and to the use of him to whom it is made, without authority; but if it be delivered to any stranger without any such declaration, intention or intimation, unless it be in case where it is delivered as an escrow, it seems there is not sufficient delivery." Justice Spencer cites the above with approbation in *Jackson vs. Phipps* (12 *J. R.* 419), though he says that it is essential to the legal operation of the deed that the grantee assents to receive it, and that there could be no delivery without acceptance. The same point was discussed in *Verplank vs. Story* (12 *J. R.* 550), where the same judge re-

marks that "a deed is available if delivered to the party grantee, or even to a stranger without special authority, if intended for the use of the grantee." And also in giving the opinion of the court in *Jackson vs. Goodell* (20 *J. R.* 187), he observes that "it is necessary to the validity of a deed that there be a grantee willing to accept it. It is a contract, a parting with property by the grantor and an acceptance thereof by the grantee. An acceptance will be presumed from the beneficial nature of the transaction, where the grant is not absolute." *See Belden vs. Carter,* 4 *Day,* 66; *Wheelright vs. Wheelright,* 2 *Mass.* 447; *Hatch vs. Hatch,* 9 *do.* 307. The case of *Maynard vs. Maynard* (10 *Mass.* 456), at first view would seem to be in conflict with these authorities, but upon examination will be found to be entirely consistent with them. There it appeared that the grantee had no knowledge that the deed had been executed in his favor. The grantor duly executed and acknowledged the deed and left it with the witness to be taken to the register to be recorded. The witness carried it to the register accordingly, and had it recorded, and received it back. He was then requested by the grantor to keep the deed *until it was called for.* After the death of the grantee, the grantor called for the deed, saying that he supposed he had a right to do as he pleased with it, and then cut his name and seal from it. In an action to recover possession of the premises, brought against the widow and other tenants, children of the grantee, the court held that there was no delivery of the deed so as to pass the title, and that the tenants could claim no title under it; that the facts of the case left no doubt of the intention of the grantor ultimately to pass the land to his son, but to keep control over it until he should be more determined upon the subject; that there was not an absolute delivery of the deed, and that all that was wanting to its complete effect was but to direct the witness to deliver it to his son after his own decease. Also, in *Hedge et al. vs. Drew* (12 *Pick. R.* 141), it was held that a delivery of a deed to the register of deeds by the grantor, for the *use of the grantee,* "to be recorded, and the grantee's subsequent assent to the same, is equivalent to an actual delivery to the grantee, and the deed will prevail against an attachment by a creditor of the grantor made after such assent." The case of *Samson vs. Thornton* (3 *Met. R.* 275), which was cited upon the

argument, raised the question as to what facts constituted a delivery of a deed. There the grantor and grantee had agreed about the sale of the land, the latter agreeing to pay $30 a rod. A deed was made, dated May 31, 1833, in which no consideration was inserted. On the 26th of December following, the grantor acknowledged the deed, and sent it to the register to be recorded, without the knowledge of the grantee, who had gone to sea in August previous, and did not return until February, 1836. The land was attached as the property of the grantor in January, 1835. On the grantee's return from sea, the grantor had become insolvent, and the first question the former asked the latter when they met on his arrival, was, "I am sorry to hear of your misfortunes; what have you done about the lot?" The grantor answered, "I presume it is all straight; the deed has been sent to Taunton to be recorded." To which the grantee replied, "I am very glad of it." The court held that there was no delivery of the deed before the grantee went to sea, and that, therefore, it was incomplete; that sending it to the register to be recorded was the grantor's own act; and that the grantee had no title as against a creditor of the grantor, who had attached the land before the grantee had accepted the deed.

Shaw, C. J., in giving the opinion of the court, says: "This is distinguishable from the case of *Hedge vs. Drew* (12 *Pick.* 141), where the father proposed to the daughter, to execute a deed to her, and to leave it with the register for her use, and she expressed her assent to, and satisfaction with the arrangement. She thereby made the register her agent to receive the deed." In *Church vs. Silman* (15 *Wend.* 656), the point as to what was a good delivery, was most directly presented to the court, and it was decided that delivery need not be to the grantee in person; it is enough if the deed be delivered to a third person *for the use of the grantee.* Says C. J. Savage, in speaking of conveyances in the nature of testamentary dispositions, and absolute deeds: "The question in both cases is, whether the grantor has divested himself of the estate; if he has, that estate vests in the grantee; and whether he has so divested himself or not, depends upon the delivery. If the delivery is absolutely as his, the grantor's deed to the stranger for the use of the grantee, the delivery is good; but if it be delivered to the stranger, subject to

the future control of the grantor, no estate passes. When the delivery is absolute, the assent of the grantee is presumed from the fact that the conveyance is beneficial to him."

The case at bar falls fully within the principle of *Hedge vs. Drew.* Here the grantee saw the deed after it was drawn, and the parties came to the understanding that the deed should be executed and left with the register to be recorded. There was an absolute divesting by the grantor of his estate in the land, and the deed was delivered to the register, who *pro hac vice,* may be considered the agent of the grantor to receive it. It is readily distinguishable from the cases where the grantor executes the deed without the knowledge of the grantee. It may be presumed that Upson directed the deed to be left with the register, since that *was* the final determination of the parties. At all events it most clearly and unequivocally appears that he assented to this arrangement, and therefore the delivery of the deed to the register must be deemed a good delivery.

This deed then, from Jackson to Upson, having been duly executed, it is evident that at the time the judgment in favor of the complainants was entered up, Jackson had divested himself of his interest in the lands. The answer of Upson must be considered for the purposes of the motion to dissolve the injunction, as strictly true, and that discloses a good and sufficient consideration to support the deed. The injunction, therefore, as to Upson, was properly dissolved.

We do not feel called upon to express any opinion upon the other questions raised upon the argument.

The decree of the Circuit Court is affirmed, with costs.