KELLOGG v. MILLER.

*[Circuit Court, D. Nebraska  January, 1881.)*

1. CONTRACT—BETWEEN CITIZENS OF DIFFERENT STATES.

A citizen of one state may loan money to a citizen of another state, and contract for the rate of interest allowed by the laws of the latter state, although the legal rate of interest allowed is greater in such state than in the state where the contract is made, and in which it is to be performed. Where it appears upon the face of the contract that such was the intention of the parties, it constitutes an exception to the rule that the law of the place where the contract is made must govern in expounding and enforcing it.

2. SAME—CONTRACT NOT USURIOUS—CASE STATED.

Where a citizen of New York loaned money to a citizen of Nebraska, secured by bond and mortgage on land in Nebraska, the money being furnished in New York and the mortgage being executed in Nebraska, and the statute of New York limiting the right to interest on loans at 6 per cent. per annum, and being highly penal, while the statute of Nebraska allowed the rate of 10 per cent. per annum, *held,* that the contract reserving 10 per cent. interest, the legal rate in Nebraska, was not usurious, notwithstanding that it was made in New York and was to be performed in that state.

In Equity.

*J. H. Martindale* and *W. J. Lamb,* for complainant.

*T. M. Marquett,* for respondent.

McCRARY, C. J. By the law of New York a contract for the payment of more than 7 per cent. per annum interest on money borrowed is absolutely void. If, therefore, the contract sued on in this case is a New York contract, and to be governed by the New York statute, it cannot be enforced. If, on the other hand, it is a Nebraska contract, and to be governed by the Nebraska statute, it is valid. To aid us in the determination of the question, what law shall be applied, we have the following undisputed facts:

(1) That complainant is, and was at the time of the contract, a resident and citizen of the state of New York, and that defendant is, and was at said time, a resident and citizen of Nebraska; (2) that the terms of the loan were agreed upon in New York, and it was there agreed that it should be secured by mortgage upon lands in Nebraska, and by bond, both to be executed in Nebraska; (3) that afterwards the bond and mortgage were executed by respondents, J. G. Miller and wife, in Nebraska, and sent by mail to R. H. Miller, in Le Roy, New York, by whom they were at that place delivered to complainant; (4) the money was actually paid to respondent, Jason G. Miller, through his agent in New York; (5) the bond stated on its face no place of payment; (6) the loan was made with the understanding that the bond and mortgage would be executed in Nebraska, and that the interest should be according to the law of Nebraska.

It is to be observed, in the first place, that the law will not so construe a contract as to make it void if it will reasonably bear a different construction making it valid; and the defense of usury, especially where the penalty is the forfeiture of the whole debt, must be established by a clear preponderance of testimony. 1 Jones, Mortg. § 643, and cases cited.

It is not to be doubted that a contract fairly and honestly made between a citizen of Nebraska and a citizen of New York, whereby the latter agrees to loan to the former a sum of money at a rate of interest lawful in Nebraska, to be secured by mortgage upon lands in Nebraska, and to be performed in and governed by the law of that state, is a valid contract even if actually executed in New York.

"Where the contract is made in one place and is to be performed in another place, * * * the law of this last place must determine the force and effect of the contract, for the obvious and strong reason that parties who agreed that a certain thing should be done in a certain place intended that a legal thing should be done there, and therefore bargained with reference to the laws of the place, not in which they stood, but in which they were to act." Parsons, Mer. Law, 321.

This rule applies here, if we may assume that the contract was to be performed in Nebraska; and that it was to be performed there seems to be clear, in view of the following facts: (1) No place of performance is named; (2) the obligor resided there; (3) the land mortgaged is situated there; and (4) the bond and mortgage were executed there.

Says the same author: "If the contract be made by letter, or by separate signatures to an instrument, the contract is then made where that signature is put to it, or that letter is written, which in fact completes the contract."

Although certain preliminary negotiations were had in New York, yet the contract was consummated, so far as Miller was concerned, when he executed the bond and executed, acknowledged, and recorded the mortgage in Nebraska, and deposited them in the post-office directed to his brother in New York, to be by him delivered to complainant. That is the place where the signature was put to these papers, which in fact completed the contract. It is said that the delivery was in New York, and that the contract was not consummated until the papers were delivered. But the proof shows that the parties agreed that the bond and mortgage should be executed in Nebraska; that the mortgage should be recorded there; and that, after recording, the papers should be sent to New York to the complainant. Under these circumstances I think that a delivery of the mortgage to the recorder for record was a sufficient delivery to the grantee. *Cooper* v. *Jackson*, 4 Wis. 537; *Marterson* v. *Cheek*, 23 Ill. 72; *Hedge* v. *Drew*, 12 Pick. 141; *Jackson* v. *Cleveland*, 15 Mich. 94; *Boody* v. *Davis*, 20 N. H. 140.

But it is not necessary to place the decision of the case upon the ground that the contract was to be performed in Nebraska. It is now well settled by authority, as it is certainly well supported by reason, that a citizen of one state may loan money to a citizen of another state, and contract for the rate of interest allowed by the law of the latter, especially in a case like the present, where the money is to be used in the latter state, and is secured by a mortgage upon lands located there; and this notwithstanding the place of payment may be else-where. This doctrine constitutes an exception to the general rule that the law of the place where the contract is made is to govern in enforcing and expounding it. Thus, in the case of *Arnold* v. *Potter*, 22 Iowa, 194, it was held that it was competent for citizens of different states, who are parties to a promissory note, to contract in good faith for the rate of interest, and with reference to the law of the state where the maker resides, and where the property mortgaged to secure the note is situated, although the note is in terms payable in a state different from the residence of either, and the rate of interest reserved is greater than the legal rate of the state where the note is made, or where by its terms it is payable.

In that case *Wright*, J., said: "The general rule is well settled that the law of a place where a contract is made is to govern in enforcing or expounding it, unless the parties provide for its execution elsewhere; in which case it is to be governed by the law of the latter

place. The parties may, however, if it is made in one place to be executed in another, stipulate that it shall be governed by one or the other." And again: "Nor do we hold that a citizen of one state could make his note in another to a resident there, payable in a third, with interest as allowed in a fourth. But what we do hold is, that if A., of Iowa, in good faith, borrows money of B., of Illinois, gives security on land in Iowa, and they in good faith agree that the law of Iowa shall govern, that a note given in pursuance of said contract in Illinois, bearing the interest allowed by our laws, would not be usurious." And the same rule is laid down by Chancellor Kent, who says: "The general doctrine is that the law of the place where the contract is made is to determine the rate of interest where the contract specifically gives interest; and this will be the case though the loan be secured by a mortgage on land in another state, *unless there be circumstances to show that the parties had in view the laws of the latter place in respect to interest.*" 2 Kent, Comm. (12th Ed.) 460. And see *Newman* v. *Kershaw*, 10 Wis. 333; *Vliet* v. *Camp*, 13 Wis. 221.

Lord Mansfield laid down the rule in these words: "The law of the place can never be the rule where the transaction is entered into with an express view to the law of another country, as the rule by which it is to be governed." *Robinson* v. *Bland*, 2 Barr, 1077, 1078.

In applying this rule in this case there is but a single question of fact to be considered, and that is the question of good faith. Did the parties in good faith agree that this loan should be made according to, and to be governed by, the law of Nebraska? As already said, the law will presume an honest intent, unless there is something in the nature of the transaction or in the proof to establish the contrary. The usury law of New York is a statute highly penal in character, and a purpose to violate it will not be presumed in the absence of clear proof. So far from showing clearly a purpose on the part of complainant to violate that statute, I think the contrary appears. That the parties both understood that they were contracting with reference to the law of Nebraska is affirmatively shown by the testimony. In the course of the negotiations reference was continually had to the law of Nebraska relating to interest. The borrower lived there, and represented to complainant that a loan at 10 per cent. under the laws of Nebraska would be lawful. Advice was taken as to the proper mode of contracting under that law, and out of abundance of caution it was decided that Miller should return to Nebraska and there execute the bond and mortgage, and have the latter recorded, after which he was to forward them by mail to complainant in New

York. Respondent, J. G. Miller, himself admits in testimony that he informed complainant that the legal rate of interest in Nebraska was 10 per cent., and that complainant informed him that he wanted to make the contract so as to be sure of that rate of interest. When we bear in mind that the parties had, under the circumstances in which they were placed, a perfect right to adopt the law of either state, provided only they did so in good faith, and that they were so advised, it is difficult to see what sufficient motive they could have had to resort to any device or to act in bad faith. Men do not ordinarily prefer to violate a penal statute and run the risk of the confiscation of valuable property, when a safe, convenient, and honest way of proceeding is open before them.

It only remains to consider some facts not enumerated above, and upon which counsel for respondents relies. It appears that at the time of the original agreement the complainant advanced to Miller $4,500, on which interest at 10 per cent. was charged from January 30, 1871, to March 15, 1871. It is insisted that as to this sum there was usury under the law of New York, and that inasmuch as the $4,500 went into the mortgage debt and into the bond, it makes the whole bond usurious. But it is clear that there was in reality but one transaction, to-wit: A loan of $15,000 to a citizen of Nebraska, to be secured upon land in that state, and to bear 10 per cent. per annum interest, according to the law of that state.

This being so, the fact that pending the preparation and execution of the necessary papers, and their transmission from Nebraska to New York, the complainant advanced a portion of the loan at the rate of interest agreed upon, was not a violation of the usury laws of New York.

I hold that, according to the evidence and the law, the entire transaction, from the beginning, was conducted with reference to the law of Nebraska relating to interest, and must be judged by that law alone. This renders it quite unnecessary to go into the question whether 10 per cent. interest was actually paid in New York upon the sum advanced on the loan, or any part of it; because if it is so it does not render the contract usurious.

The exceptions to the master's report are overruled, and decree will be entered for complainant in accordance with the said report.