ESTATE OF BRILL: PREDMORE, Claimant, vs. HAMLEY, Administrator, Defendant.    [Cross-appeals.]

*February 14—March 11, 1924.*

*Frauds, statute of: Contract to make devise: Requisites: Certainty: Delivery: Enforcement: Specific performance: Imposing trust on property: Recovery on quantum meruit: Evidence: Findings of court: Weight on appeal.*

1. A verbal contract to devise land in consideration of services to be performed was void as an attempted contract for the transfer of lands or an interest therein, which must be in writing under sec. 2304, Stats., and such agreement can be resorted to for no purpose except to rebut the presumption, where it exists, that the services were gratuitously rendered.  p. 285.

2. A finding of the court on uncontradicted testimony cannot be disturbed on appeal.  p. 285.

3. An agreement to execute a last will and testament cannot be specifically enforced, since such an action could only be brought in the life of the promisor, and no breach of the agreement can be assumed so long as he lives.  p. 286.

4. If a contract to make a will is sufficiently proved and the conditions relating to specific performance have been complied with, equity will enforce the contract by seizing the property agreed to be devised and imposing upon it a trust in favor of the promisee.  p. 286.

5. A contract to devise property must have a consideration, must be mutual, fair, and just, and the proof of the contract must be definite and certain.  p. 286.

6. A contract to devise land need not be signed by the promisee, it being sufficient if it is signed and delivered by the party to be charged and accepted by the promisee.  p. 287.

7. A written agreement to devise land, signed only by the deceased and left with his attorney, without any evidence showing an intention to deliver it to the promisee, does not constitute a delivery; and a delivery is necessary to make such an agreement valid.  p. 288.

8. Nor was plaintiff's knowledge of the existence of the contract, and the rendering of services relying on it, with only general knowledge of its contents, equivalent to a delivery and acceptance so as to take the agreement out of the statute of frauds.  p. 288.

9. Contracts to devise land for services performed or to be performed cannot be sustained unless they are clearly proven by satisfactory evidence.  p. 289.

APPEALS from a judgment of the county court of Fond du Lac county: A. E. RICHTER, Judge. *Affirmed.*

Charles Brill died intestate on March 29, 1922. A claim was filed against his estate based upon services rendered between 1904 and 1922, the claimant being a cousin of the deceased.

Deceased had resided on a farm near Rosendale, Wisconsin. The claimant lived with her husband in Simpson, Minnesota. During the period of years between the dates mentioned, claimant visited at the home of deceased about three weeks every year, and while there, according to her testimony, she did all the housework and at times took care of deceased when he was sick.

The services rendered by claimant consisted of housework, nursing, and preparing meals. The expenditures listed by her included items for railroad fare to and from Rosendale, and also for livery hire.

The estate of deceased consisted of a farm inventoried at $10,600, and about $500 worth of personal property. It was alleged by claimant that deceased had expressly agreed, in consideration of services furnished and to be furnished, that he would pay her by a provision in his will twenty-five per cent. of all the property of which he should die possessed.

The trial court found that in the summer of 1909 a verbal agreement was entered into between deceased and claimant whereby deceased promised to will to the claimant twenty-five per cent. of all the property of which he might die possessed in consideration of the care and board which she had furnished him in the past and was to furnish in the future up to the time of his death, and that for such consideration the claimant agreed to take care of deceased as she had been doing in the past, namely, to visit him at his home in Rosendale, and help him in the care of his home and himself, and to take care of deceased in her own home in Minnesota, annually, as he might wish; and in case he died first, she

agreed to care for his wife during the remainder of her life, and in case the wife died first she agreed to take care of him during the remainder of his life.

It was further found by the court that deceased consulted his lawyer and instructed him to draw up an agreement as above outlined; that this agreement was so drawn up and left with the attorney; that it was never delivered to *Harriet Predmore,* the claimant; that in the following year he told the husband and son of claimant that he had fixed up the agreement so solid that it could never be broken and that claimant would get twenty-five per cent. of his property upon his death.

It was also found that the deceased learned that the agreement above mentioned had been lost; that thereafter he went to another attorney and instructed him to draw up an agreement like the lost one and retain it in his possession; that the agreement was so drawn, and was later destroyed by a fire which occurred in the office of the attorney; that claimant was informed of the first agreement which had been drawn up, and that thereafter she performed services and made expenditures in reliance upon this agreement.

The trial court found that the services rendered to deceased and the expenditures made during the six years immediately preceding his death were of the value of $556.90. He found as conclusions of law that by reason of the non-delivery of the agreements above mentioned they were void and gave claimant no right, except to furnish evidence of the intention of deceased concerning the matters referred to in the agreements; that by reason of the statute of limitations, compensation for services furnished prior to the six years before the death of deceased could not be recovered. Judgment was ordered accordingly.

For the plaintiff there was a brief by *Sutherland, Hughes & Sutherland* of Fond du Lac, and oral argument by *D. D. Sutherland.*

*Samuel M. Pedrick* of Ripon, for the defendant.

JONES, J.    In this case both parties appeal from the judg-
ment.    The plaintiff claims that judgment should have been
rendered in the way of specific performance, giving to her
one fourth of the estate according to the alleged agreement.
The defendant appeals, urging that the plaintiff was entitled
to no recovery whatever.

Both parties are agreed that the verbal contract was ren-
dered void because it was an attempted contract for the
transfer of lands or an interest therein, which must be in
writing.    Sec. 2304, Stats.; *Estate of Leu,* 172 Wis. 530,
179 N. W. 796; *Martin v. Estate of Martin,* 108 Wis. 284,
84 N. W. 439; *Loper v. Estate of Sheldon,* 120 Wis. 26, 97
N. W. 524; *Taylor v. Thieman,* 132 Wis. 38, 111 N. W.
229; *Nelson v. Christensen,* 169 Wis. 373, 172 N. W. 741.
It is now well settled in this state by these cases that a void
agreement of this character can be resorted to for no pur-
pose except to rebut the presumption, where it exists, that
the services were gratuitously rendered.

Counsel for defendant contends that under such cases as
*Estate of Kessler,* 87 Wis. 660, 59 N. W. 129, and *Estate of
Andrus,* 178 Wis. 358, 190 N. W. 83, it must be presumed
that, since the parties were relatives by blood, neither party
intended to receive or pay compensation for services, but
that they were rendered gratuitously.    It was further argued
that there was no sufficient testimony to rebut this presump-
tion, since the only testimony was that of the husband and
son of the plaintiff, who were deeply interested parties.

The trial court saw and heard the witnesses and found
that the oral agreement alleged was entered into.    There was
no contradictory testimony.    The finding of the court on
that subject cannot be disturbed.

Defendant's counsel also contends that there was no suffi-
cient proof to sustain the finding as to the value of the serv-
ices and the liability for the expenses incurred by the claim-
ant.    There was considerable testimony on these subjects.
That of defendant's witnesses tended to show that while the

plaintiff was at the home of the deceased the relation was that of visitor. On the other hand there was quite convincing testimony that during the latter part of the life of decedent, and in his last illness, quite important and valuable service was rendered. We do not consider that the finding of the trial court on this branch of the case should be set aside.

We now come to the consideration of plaintiff's appeal. It is clear that an agreement to execute a last will and testament cannot be specifically enforced, since such an action could only be brought in the life of the promisor, and no breach of the agreement can be assumed so long as he lives.

But it seems well settled that if such a contract is sufficiently proved and the conditions relating to specific performance have been complied with, equity will enforce the contract by seizing the property agreed to be devised and imposing on it a trust in favor of the promisee.

The contract must have a consideration and there must be mutuality. It must be fair and just, and the proof of the contract must be definite and certain. These requisites are necessary under general rules relating to specific performance of contracts, and the general rule that specific performance rests in the sound discretion of the court applies.

There have been many decisions holding that contracts of this character for the performance of services, when fair and equal, could be specifically enforced on the theory that it is entirely competent for a party to stipulate for the disposition of his property at the time of his decease. There are instances in which verbal contracts of this nature have been enforced where there had been full performance on the part of the one rendering the service. This is illustrated in cases where the one seeking specific performance had entered upon the land of the promisor and lived with him and had made valuable improvements. But it was held in *Ellis v. Cary*, 74 Wis. 176, 42 N. W. 252, that perform-

ance on the part of the promisee, by rendering the agreed services, is not sufficient to take the promise out of the statute.

These decisions in which specific performance has been decreed seem to rest on the ground that after a person has long had the benefit of such services a neglect to make the provision agreed upon would operate as a fraud. The decisions on this general subject are very fully collected in two valuable notes in 44 L. R. A. N. s. 733, and 31 Am. & Eng. Ann. Cas. 399, and we shall not undertake to review them.

The rule in this state as to verbal agreements of this character has been already stated.

It is argued by counsel for plaintiff that under the statute it was not necessary that the contract should be signed by her; that it sufficed if the contract was signed by the party to be charged and accepted by the claimant. If the execution of the writing was established and if there was an acceptance and the writing was delivered, this would undoubtedly be true. *Docter v. Hellberg,* 65 Wis. 415, 27 N. W. 176; *Wall v. M., St. P. & S. S. M. R. Co.* 86 Wis. 48, 56 N. W. 367; *Douglas v. Vorpahl,* 167 Wis. 244, 166 N. W. 833.

The testimony as to the acceptance by the plaintiff of the alleged written contract is not so satisfactory as could be desired. She never saw it and was confessedly ignorant of its details. The amount and kind of services to be rendered were more or less uncertain. The arrangement differed essentially from most of the cases of this character in which specific performance has been decreed after the plaintiffs had abandoned their own pursuits and given their time and labor for the benefit of the promisor.

The most serious defect in the plaintiff's claim for specific performance is that the alleged written agreement was never delivered. There are numerous cases in which specific performance has been decreed based on letters between the par-

ties which fulfilled the requirements of the statute of frauds. Specific performance has been decreed in such cases where the letters were lost and their contents were proven by parol. See note in 44 L. R. A. n. s. 748.

In other cases a written agreement had been made signed only by the party to be charged and left with some third person with the direction that it be delivered after death; but in the case at bar there is an entire absence of any evidence showing an intention to deliver the contract. The situation is essentially the same as if decedent had made the alleged agreement and kept it in his own personal possession. Under the evidence he could have called for it and destroyed it at any time.

This raises the question whether the plaintiff's knowledge of the existence of such a document, and her rendering service relying on it, with only general knowledge of its contents, would be equivalent to a delivery and acceptance and take the agreement out of the statute of frauds.

No authority is cited by plaintiff's counsel fully sustaining the position that a delivery of the memorandum or agreement was not necessary. The decided weight of authority seems to be to the contrary. *Cagger v. Lansing,* 43 N. Y. 550; *Parker v. Parker,* 67 Mass. 409; *Comer v. Baldwin,* 16 Minn. 172; *Callanan v. Chapin,* 158 Mass. 113, 32 N. E. 941; *Campbell v. Thomas,* 42 Wis. 437; *Koch v. Williams,* 82 Wis. 186, 52 N. W. 257; *Brown v. Brown,* 33 N. J. Eq. 650; *Steel v. Fife,* 48 Iowa, 99.

The question is generally presented in respect to contracts relating to the sales of land, but the principle is the same. We agree with the trial court that, since there was no delivery of the writing relied on, it cannot be made a ground for specific performance.

It was earnestly contended by counsel for defendant that the execution of the writing relied on was not established; that the only proof of its contents was by the attorney who drew, on information furnished by deceased, a substitute

for the original writing, and that this evidence was not competent because, as claimed, it related to confidential communications between attorney and client.

It was argued by plaintiff's counsel that the attorney who drew the second instrument acted as a scrivener and not as attorney, and further, that as he signed as a witness he could testify to communications made to him by the deceased under the rule which permits witnesses to a will to, testify when it is probated.

In view of our conclusion it becomes unnecessary to decide these questions, but it seems proper to add that in cases of this character it is incumbent on the claimant to prove satisfactorily that a definite contract has been made. It was said by the supreme court of Illinois that before specific performance is enforced the contract must be established by the claimant by the most convincing evidence. *Klussman v. Wessling*, 238 Ill. 568, 87 N. E. 544.   In the New York court of appeals it was said:

"While such contracts are sometimes enforced by the courts, it is only when they have been established by evidence so strong and clear as to leave no doubt, and when the result of enforcing them would not be inequitable or unjust." *Hamlin v. Stevens*, 177 N. Y. 39, 48, 69 N. E. 118.

There are very obvious reasons why contracts of this character should not be sustained unless they are clearly proven by satisfactory evidence.   Such contracts may divert from the natural channels large portions of an estate.   It is quite natural that those who have rendered services for one since deceased should magnify their value, and if contracts of this character for the division of estates are too much favored, the door is opened for unscrupulous claimants to base their claims on equivocal promises or documents claimed to be lost, to the great prejudice of heirs or legatees. Such contracts have been described as dangerous and subject to the closest scrutiny. *Shakespeare v. Markham*, 72 N. Y.

400; *Winne v. Winne,* 166 N. Y. 263, 59 N. E. 832; *Hamlin v. Stevens,* 177 N. Y. 39, 69 N. E. 118.

What is said is not intended to reflect in any manner upon the truthfulness or good faith of any of the witnesses in this case.

The trial court made a liberal allowance for services and expenses, and we are of the opinion that the ends of justice are subserved by the judgment rendered. We agree that costs were properly allowed to the plaintiff.

*By the Court.*—Judgment affirmed. No costs allowed, except that plaintiff pay the fees of the clerk of this court.