ESTATE OF WEBER: SCHMUTZLER, Respondent, vs. WEBER, Executor, and others, Appellants.

*January 9—February 6, 1951.*

For the appellant Walter Weber, executor, there was a brief by *Kading & Kading* of Watertown, and oral argument by *Charles E. Kading*.

*George A. Hartman* of Juneau, for the residuary legatees.

For the respondent there was a brief by *Dakin & Dierker* of Watertown, and oral argument by *Roland F. Dierker*.

HUGHES, J. Claimant's rights rest squarely upon the testimony of Mrs. Louise M. Weber, the divorced wife of the decedent, who has herself filed a claim against the estate. Heirs of the deceased are children of an earlier marriage.

Concerning the re-employment of Schmutzler by Weber in 1941, Mrs. Weber testified that Mr. Weber wanted Schmutzler back badly and said "he would remember him

well, would put up a security for him at the bank." She later testified that in conversation in her presence Weber told claimant "he would pay him well and he would leave $2,000 for him at the Farmers & Merchants Bank with Mr. Schatz and said he would remember him in his will."

After describing the location of the conversation she was asked by claimant's attorney:

"*Q*. He at that time, as you stated, made him three promises, is that correct? *A*. Yes, he did.

"*Q*. For the record will you state once more just what those three promises were?"

Over objection she answered:

"*A*. That he would leave $2,000 with Mr. Schatz at the National Bank.

"Court: Yes.

"*A*. And would remember him in his will and pay his social security and reimburse him well for all these—his work that he did.

"*Q*. Was it stated under what circumstances the $2,000 was to belong to Ed Schmutzler? *A*. Well, it was sort of a security.

"Court: What was said? What did Mr. Weber say, if anything, about this $2,000? *A*. Well he said he would give him that, make this payment for him at the bank and leave it there for him so that he could have it for his work that he did."

She then testified that Schmutzler returned to work as a result of this conversation.

We are of the opinion that this testimony is so indefinite and uncertain as to be incapable of establishing an agreement between the claimant and the decedent. Nothing appears to indicate when the amount was to be paid or due to Schmutzler and so far as the testimony of Mrs. Weber is concerned, it would appear that if any amount was to be deposited at all it was to be deposited in 1941 at the time that Schmutzler returned to work. This, however, is somewhat speculative,

also. The testimony certainly falls far short of the requirements of the law upon proof of this type of claim.

As was said in *Estate of Brill* (1924), 183 Wis. 282, 289, 197 N. W. 802:

"There are very obvious reasons why contracts of this character should not be sustained unless they are clearly proven by satisfactory evidence. Such contracts may divert from the natural channels large portions of an estate. It is quite natural that those who have rendered services for one since deceased should magnify their value, and if contracts of this character for the division of estates are too much favored, the door is opened for unscrupulous claimants to base their claims on equivocal promises or documents claimed to be lost, to the great prejudice of heirs or legatees. Such contracts have been described as dangerous and subject to the closest scrutiny."

The trial court in its opinion said Mrs. Weber's testimony was "somewhat corroborated by the testimony of Adolph LaBuwi," a bartender who had been in the employ of the deceased, and who testified that when negotiating for wages at the time of his employment by Weber, a comparison of the wages of Schmutzler came up and Weber said to him:

"Schmutzler he is my head man here, he is barn boss, he is my foreman on the farm and he also does all my bookwork. . . . I'm paying him so much a week and besides that I'm paying his social security and I am leaving him a nice little sum at the bank in case that he stays with me."

This is doubtful corroboration of indefinite testimony.

Our conclusion that the testimony was unsatisfactory is further supported by the decision of the trial court allowing the claim at $1,500. If the claim had been proved by satisfactory evidence, it should have been allowed in full.

An examination of the record shows a complete lack of evidence from which any enforceable promise or agreement of the parties can be spelled out.

*By the Court.*—Judgment reversed and cause remanded with directions to disallow the claim.