McPHERSON VS. FEATHERSTONE and another.

DEED: EXECUTION OF. *In another state, of lands here. Not invalid because acknowledgment not authenticated.* Ter. Stats., 1839, *p.* 179.

DELIVERY OF. (2) *Effect of, to stranger for benefit of grantee.* (3) *Presumption, that such delivery is for grantee's benefit. Vests legal title.*

ADVERSE POSSESSION. (4) *Question of, here one for jury.* (5, 6) *Resulting trust.*

EJECTMENT. *Equitable defense in, triable after legal issue disposed of.*

1. Under the revised territorial statutes of 1839, a deed of land in Wisconsin, executed in New York, would pass the title as between the parties, without any acknowledgment, if otherwise duly executed (*Quinney v. Denney*, 18 Wis., 485; *McMahon v. McGraw*, 26 id., 614); and therefore such a deed is not invalidated by the fact that the certificate attached to it, showing the official character of the justice who took the acknowledgment, and the genuineness of his signature, does not state that the acknowledgment was taken in accordance with the laws of New York.

2. Where a deed is delivered to a stranger for the benefit of the grantee, who is ignorant of its execution, but, when informed of the fact, accepts the conveyance, it takes effect and vests the title in such grantee, provided the rights of third parties have not intervened.

3. In 1844, A. M., then an unmarried man, immigrated to Wisconsin from Scotland, and purchased lands here, taking title in his own name to all of them except the tract here in question; but his deed of this tract was made, at his request, to his brother, the present plaintiff, and was received by A. M. and retained until his death in 1853, plaintiff knowing nothing of the transaction. Soon after the death of A. M. (leaving a widow and children), plaintiff was informed that he was named in the deed as grantee, and immediately accepted the grant and ratified his brother's acceptance of the deed. *Held,*

(1) That in the absence of all evidence to the contrary, it must be *presumed* that A. M. received the deed for plaintiff's benefit.

(2) That the facts recited show a valid delivery of the deed, and that the *legal title* vested in the plaintiff, whoever may have paid the consideration.

4. Proof that A. M., after receiving such deed, went immediately into possession, improved the land, built upon it, occupied the house as a homestead, paid taxes, and exercised acts of ownership over the property for over twenty years and until his death, without communicating to plaintiff the fact that the deed ran to him, will not justify

the court in holding *as matter of law* that the possession of A. M. was *adverse* to plaintiff; but the question whether he claimed the land as his own or intended his possession to inure to plaintiff's benefit, is for the jury.

5. Whether, if the consideration for the land was paid by A. M. (the conveyance being prior to ch. 57, R. S. 1849), there was a *resulting trust* in his favor which will be enforced in equity, is not here decided.

6. If such a trust is set up by defendant in ejectment by way of *counterclaim*, he is entitled to a trial of that issue by the court, after the legal issue is determined against him by a jury.  *Du Pont v. Davis*, 35 Wis., 631.

APPEAL from the Circuit Court for *Rock* County.

Ejectment to recover possession of eighty acres of land. Complaint in the usual form, demanding recovery of possession and damages for the withholding.  Answer:  1. A general denial.  2 and 3. That defendants, and those under whom they claim, had been actually seized and possessed adversely to plaintiff for twenty years and upwards, prior to commencement of action.  4. That in 1844, one Alexander McPherson purchased said premises of one Joseph Webb, paying the entire consideration therefor with his own money, but that a deed of the same was executed by said Webb to the plaintiff, *Paul McPherson*, and delivered to said Alexander; that said deed was never delivered to plaintiff, and has never been recorded; that said Alexander entered into the possession of said premises immediately after such purchase, erected a house and other buildings thereon, fenced and improved the same, and lived upon and occupied said premises as owner thereof until July 11, 1853, when he died, leaving a widow, the defendant, *Janet Featherstone*, and two children; that said widow, and since 1856, her present husband, *Daniel Featherstone*, have continued to occupy and possess said premises up to this time, and, with them, until recently, said two children; that said conveyance was made to the plaintiff without his knowledge; that he had no knowledge thereof till after the death of said Alexander; that he did not direct that said conveyance be made to him,

and has never claimed or demanded rent from defendants or said Alexander, but that since the year 1844, said Alexander McPherson in his lifetime, said *Janet Featherstone* and her children, and these defendants, since their marriage, have had exclusive possession, use, benefit and control of said premises, and of the rents, issues and profits thereof, without claim to the same by plaintiff; that the value of improvements put on said premises by Alexander McPherson and defendants, is $1,000, of which $700 has been expended by defendants in the last six years in permanent improvements. And they pray judgment that plaintiff convey to defendant, *Janet Featherstone*, and said children, or that the court adjudge title thereto to be in them in the same manner as if said Alexander had died seized.

The plaintiff replied, denying the adverse possession, and claiming that the possession of the defendants and of Alexander, was in subordination to his title. He alleged that said Alexander received said deed from Webb for his benefit; and that said improvements, if any, had been without color of title.

Upon the trial, to prove title in the plaintiff, he offered in evidence a deed dated August 9, 1844, executed by Joseph Webb to *Paul McPherson* in Jefferson county, New York. The deed was signed and sealed by the grantor, witnessed by two subscribing witnesses, and acknowledged before a justice of the peace, who certified such acknowledgment, and whose official character and the genuineness of his signature were certified by the clerk of the county and of the court of common pleas of said county of Jefferson; but such authentication does not certify that the deed was executed in accordance with the laws of the state of New York. The leading facts, as proved upon the trial are stated in the opinion.

The plaintiff having rested, the defendants moved for a nonsuit on the grounds that it appeared from the testimony ; (1) that the land in question has been occupied and held, adversely to the plaintiff for more than twenty years prior to the com-

mencement of this action; that he has not been seized or possessed of any part thereof within twenty years next preceding the commencement of this suit, or ever; (2) that the consideration for the property was paid by Alexander McPherson and the deed taken in the name of the plaintiff, in consequence of which a use or trust resulted to Alexander; that the plaintiff, is a mere naked trustee, having no interest, and is unable to sustain an action of ejectment; (3) that the deed never was delivered and never took effect, as a deed, in so far as plaintiff is concerned; (4) there is no proof of title in the plaintiff; no proof of the execution of this deed from Webb. But defendant's counsel admitted that justices of the peace in the state of New York had the power to take acknowledgments of deeds in 1844.

The motion was granted; and from judgment of nonsuit the plaintiff appealed.

*Pease & Ruger*, for appellant, as to the execution of the deed, from Webb to plaintiff, contended that it was admitted by the answer, in one defense and the denial elsewhere was unavailing. *Sexton v. Rhames*, 13 Wis., 103; *Smith v. Railway Co.*, 18 id., 17; *Farrell v. Hennessy*, 21 id., 635. An acknowledgment was not essential to the validity of a deed, under the statutes then in force, and if no acknowledgment was necessary, no certificate of acknowledgment was necessary. Ter. Stat., 1839, p. 179, § 9; Tay. Stat. p. 1142; *Myrick v. McMillan*, 13 Wis., 188; *Quinney v. Denney*, 18 id., 488-9; *McMahon v. McGraw*, 26 id., 619; *Gilbert v. Jess*, 31 id., 114. The presumption is that the deed was executed in accordance with the laws of the state. *Parkinson v. Bracken*, 1 Pin., 174. It was executed in accordance with the laws of this state, and the court will presume, in the absence of proof, that the laws of New York are similar to those of this state. *Rape v. Heaton*, 9 Wis., 340; *Walsh v. Dart*, 12 id., 638. This deed is an "ancient deed," over thirty years old, and requires no proof. 1 Greenl. Ev., §§ 21, 144, 570. As to the delivery of the deed. Ac-

cording to some authorities the delivery to Alexander was a delivery as of the date when *Paul* ratified it; as viewed by others it was a delivery as of the date when Alexander received it. 3 Wash. on Real Prop., ch. 4, § 2 : 20, 25, 27, 28, 33–42, 75, pp. 254–273 ; *Cooper v. Jackson,* 4 Wis., 537; *Prutsman v. Baker,* 30 id., 646. It is not necessary that there should be an actual mancupation of the deed by the grantee or his agent. *Somers v Pumphrey,* 24 Ind., 240 ; *Folly v. Wantwyl,* 4 Halst., 153 : *Shelton's Case,* Cro. Eliz., 7. And if there was not a valid execution and delivery of the deed, the plaintiff may still maintain ejectment. All that is necessary is, that the plaintiff should have the right of possession. R. S. ch. 141, § 8 (Tay. Stats., § 8, p. 1667,); *Bunker v. Rand,* 19 Wis., 258 ; *Bates v. Campbell,* 25 id., 613. Defendants have admitted the plaintiff's ownership, and that they were mere squatters, and hence there is no mere presumption of title in them to overcome. Tyler on Ejectment, p. 71. The plaintiff is equitably entitled to the possession by virtue of this deed, and if so, he is the holder of the legal estate, even though the deed was never delivered. R. S., ch. 84, sec. 3. So, ejectment may be maintained on a title by estoppel, and in this case, the defendants, as privies of Alexander McPherson are estopped from denying the execution and delivery of this deed. *Stoddard v. Chambers,* 2 How., 316–7 ; *Avery v. Judd,* 21 Wis., 262 ; *Rogers v. Cross,* 3 Chand., 34 ; Tyler on Ejectment, 73–74. They argued that the testimony shows that the land was purchased with partnership funds. In claiming a resulting trust to Alexander the *onus* is upon the defendants, and the trust must be clearly proved. *Orton v. Knab,* 3 Wis., 576 ; Perry on Trusts, §§ 77, 86, 137–9. The position, that the land was held adversely, is answered by the facts. The character of the entry determines the character of the possession. 1 Wash. on Real Prop., 124–128 ; Tyler on Eject., 870 ; *Quinn v. Quinn,* 27 Wis., 170 ; 2 Wash. on Real Prop., 296–7, 299, 300 ; vol. 3, pp. 122–26 ; Tyler on Eject., 869 ; *Whitney v. Powell,* 1 Chand., 52 ;

*Woodword v. McReynolds*, id., 249–250 ; *Edgerton v. Bird*, 6 Wis., 536–8 ; *Roebke v. Andrews*, 26 id., 311.   So far as *Mrs. Featherstone* could claim but a life estate, her possession was not adverse.   Tyler on Eject., 100.   Nor is the silent possession of one tenant in common adverse as against the other. *Challefoux v. Ducharme*, 4 Wis., .565.   And, if the defendants did not hold adversely, their possession was the possession of the plaintiff.   Tyler on Eject., 484.   The language of the statute is " *seized* or possessed," and as here used means seizin in law, or such title or ownership  as gives the legal right of possession.   Actual possession or seizin is only necessary when there is no seizin in law.   1 Wash. on Real Prop., 29, 45 ; 2 id., 498 ; 3 id., 117, 132 ; Kent Com., 386, note a ; 1 Hilliard on Real Prop., 82–3 ; Tyler on Eject., 70, 71, 77 ; *Mecklem v. Blake*, 22 Wis., 405 ; *McLane v. Bovel*, 35 id., 27.

*Bennett & Sale*, for respondents :

Under the facts, the nonsuit was properly granted, because the consideration for the land was paid wholly by Alexander, and the deed being taken in the name of *Paul*, at best could make him only a mere naked trustee having no interest in the land, and hence unable to sustain an action of ejectment.   Sec. 7 of ch. 57, Laws of 1849, first became the law of this state when the revised statutes of 1849 took effect.   Prior to the statute of 1849, concerning uses and trusts, if A. paid for land and took conveyance to B., a trust *resulted* in favor of A. by operation of law.   *Dyer v. Dyer*, 2 Cox, 92 ; *Whiting v. Gould*, 2 Wis., 552–588 ; *Lyford v. Thurston*, 16 N. H., 406 ; *Farrington v. Barr*, 36 id., 89 ; *Turner v. Eford*, 5 Jones' Eq., 106 ; *Philbrook v. Delano*, 29 Maine, 410 ; *Brown v. Dwelley*, 45 id., 52 ; *Chadwick v. Felt*, 35 Penn. St., 305 ; *Boyd v. McLean*, 1 Johns. Ch., 582 ; *Botsford v. Burr*, 2 id., 404 ; *Peabody v. Tarbell*, 2 Cush., 226–232 ; 2 Wash. on Real Prop., 172, note.   Parol proof is admissible to show the transaction out of which a trust results by operation of law.   *Peabody v. Tarbell, supra ; Rogan v. Walker, et al.*, 1 Wis., 527 ; *Boyd v. McLean, supra ; Botsford*

*v. Burr, supra.* Under the code, defendant in ejectment may set up any equitable defense. *Prentiss v. Brewer,* 17 Wis., 635; *Fisher v. Moolick,* 13 id., 321; *Hennessy v. Farrel,* 20 id., 42. Possession of property under claim of title being *prima facie* proof of title, declarations of the possessor, made at the time of his possession, showing that he claimed title, may be put in evidence to explain the character of his possession, when his title is in controversy. 1 Greenl. Ev., 108, 108 a, 109, note 3; *Jackson v. Bard,* 4 Johns., 230; *Wood v. Foster,* 8 Allen, 24; *Roebke v. Andrews,* 26 Wis., 311; *Austin v. Allen,* 6 id., 134. There is no evidence even tending to show a delivery of the deed to the land in question to the plaintiff. On the contrary, the evidence shows not only that there was no actual delivery, but no intended delivery, except in the event that *Paul* should come to this country. Unless there is evidence showing delivery of the deed, it is no deed. Shep. Touch., 57; Co. Lit., 35 b; 4 Gilm., 185; 15 Wend., 656–8; 8 Mass., 230, 239; 16 Vt., 563; 3 Wall., 536; 2 Washb. on Real Prop., 602; 1 Wood Com., 193; 5 Ind., 267. The plaintiff must also show that he was seized or possessed of the premises within twenty years before the commencement of this action. 2 Tay. Stats., p. 1622, sec. 2; *Wells v. Prince,* 4 Mass., 64; Angell on Limitations, sec. 377. What is it to be seized? See 2 Burrill's Law Dict., 920; *Jackson v. Haviland,* 13 Johns., 229; *Brown v. Porter,* 10 Mass., 93; *Doe v. Danvers,* 7 East., 299; *Shearman v. Irvine,* 4 Cranch., 367; 2 Greenl. Ev., secs. 311, 312. No man can be compelled to become the purchaser of land without his *knowledge* and *assent.* 2 Washb. on Real Prop., 606, 607; *Bullitt v. Taylor,* 34 Miss., 741; *Boardman v. Dean,* 34 Penn. St., 252; *Berkshire M. F. Ins. Co. v. Sturgis,* 13 Gray, 177. As to what constitutes adverse possession and how proved, counsel cited *Poignard v. Smith,* 6 Pick., 172; *Small v. Proctor,* 15 Mass., 495; Angell on Lim., p. 389, sec. 391.

Cole, J. In their brief, the counsel for the defendants do

not seriously attempt to sustain the nonsuit on the ground that there was no proof given on the trial which tended to show that Joseph Webb signed the deed in question. One ground on which the motion for a nonsuit was founded, stated that there was no proof of the execution of the deed by Webb; but this objection, we presume, was based upon the alleged insufficiency of the certificate of the clerk of the court of common pleas of Jefferson county, New York, who certifies to the official character of the justice before whom the acknowledgment was taken, and to the genuineness of the signature of the justice, but fails to further state that the acknowledgment was in conformity with the laws of the state of New York. This particular objection, however, seems to be practically abandoned in this court, and is doubtless untenable. For we suppose, if the certificate of the clerk were defective in the particular stated, still, if the conveyance were otherwise sufficient, the title would pass as between the parties, under the doctrine of *Myrick v. McMillan*, 13 Wis., 188; *Quinney v. Denney*, 18 id., 485; and *McMahon v. McGraw*, 26 id., 614. Those decisions were made upon the territorial statutes of 1839; and, according to the view there taken of the effect of those statutes, the deed from Webb to the plaintiff would operate to pass the title, even were there no acknowledgment by the grantor. We do not understand there is any pretense that the deed was not signed by the grantor, as it purports upon its face to have been. But it is said there is no evidence tending to show a delivery of the deed. A delivery was of course essential to give effect to the instrument and make it operative to the passing of the estate to the grantee. This principle is elementary. Before proceeding to consider the objection that the deed was never delivered, it may be well to remember the admissions in the answer, and to notice the fact that both parties are really asserting title under that conveyance. In the fourth defense or counterclaim set up in the answer, it is alleged, in substance, that, in the year 1844, Alexander McPherson purchased the

property in controversy of Joseph Webb, paying the entire consideration with his own money; that the deed was made by Webb to the plaintiff without the latter's knowledge or assent, and was delivered to Alexander, who always retained it in his possession, not even placing it upon record; that Alexander entered into the possession of the premises immediately after such purchase, fenced and improved the land by erecting buildings thereon, and actually continued to occupy and possess it as owner until his death in July, 1853.

Now, notwithstanding the general denial in the answer, it would seem that these allegations amounted to an admission of a valid delivery of the deed, and that the plaintiff might avail himself of that admission on the record. Perhaps the fact the pleader intended to put in issue or deny was the delivery of the deed to the *plaintiff, or to any one for his benefit.* But if this is the true construction of the answer, we then come to the evidence. And, passing for the present the question as to who paid the consideration, the inquiry arises, Does the evidence show a valid delivery of the deed to the plaintiff, or to Alexander for his benefit? It appears to us that it does. The leading facts in regard to the execution and delivery of the deed are in brief these: In 1844, Alexander McPherson, then an unmarried man, and brother of the plaintiff, immigrated to the territory of Wisconsin, from Scotland, and purchased this and other lands, taking the title to all except the tract in question in his own name. He negotiated with one Boyce, living near the land, for the purchase, the owner, Webb, residing in Jefferson county, New York. Boyce acted as agent for Webb, and received the purchase money when paid. Alexander requested that the deed should be made to the plaintiff, and it was executed according to this direction or request. The deed was received by Alexander and retained by him until his death, all the while the plaintiff not knowing anything about the transaction. Alexander subsequently married, and died in July, 1853, disclosing, before he died, the state of the title,

and giving various reasons why the deed was taken in the name of the plaintiff. Alexander left a widow and two children. In September, 1853, the plaintiff was informed by the executor of the will that the land was conveyed to him, or that his name was put in the deed as grantee, and he seems to have immediately accepted the grant and ratified the acceptance of the deed by Alexander for his benefit. From this time, various negotiations followed, conducted on one side by the executor or guardian of the infant children of Alexander, to procure from the plaintiff a quit-claim or release, to the widow and heirs, of his interest in the land; but from one cause or another all these negotiations failed, and the legal title apparently remained in the plaintiff at the commencement of this action. In considering the question of delivery, we lay out of view all questions as to who was the equitable owner, or whether there was a resulting trust in favor of Alexander, arising out of the alleged fact that he paid the whole purchase money. This feature of the case will be subsequently noticed. The material inquiry now is, Do the above facts show a valid delivery of the deed? It is very evident that Webb intended to execute a conveyance which would be effectual to convey his estate, and that he parted with all control over the instrument. He undoubtedly intended to make a good delivery of the deed to the grantee, or to some one for his benefit. About this there is no possible room for doubt. He evidently intended the deed should take effect as a conveyance *in præsenti*, and pass his estate. Alexander McPherson received the instrument knowing that at least it conveyed the legal title to the grantee. He assumed to act for the grantee in accepting the deed, and the plaintiff assented to and ratified his act as soon as he was informed of it. It seems to us that this amounted to a valid delivery of the conveyance. It is not denied that a deed may be delivered to a stranger for the benefit of the grantee, who may be ignorant at the time that it has been executed. If the grantee, when informed of the fact,

assents to and accepts the conveyance, the deed takes effect, providing the rights of third parties have not intervened. *Cooper v. Jackson*, 4 Wis., 537; *Turner v. Whidden*, 22 Me., 121; *Concord Bank v. Bellis*, 10 Cush., 276; *Lessee of Mitchell v. Ryan*, 3 Ohio St., 377; *Church v. Gilman*, 15 Wend., 656; *Welch v. Sackett*, 12 Wis., 244. "And a delivery may be made good by a subsequent assent, though originally invalid for want of it, upon the principle, *omnis ratihabitio mandato œqui-paratur.*" 3 Wash. R. Prop., ch. 4, § 2: 27. Here there was an absolute delivery of the deed by the grantor with the intent to pass the estate; and we must presume, in the absence of all evidence to rebut that presumption, that Alexander received the deed for the use and benefit of his brother, whose name, by his direction, had been placed in the instrument as grantee. And when the grantee, upon being informed of the transaction, ratified the delivery and assented to the grant, the deed took effect for the purposes intended. Indeed many of the cases hold, from the beneficial nature of the transaction, that an acceptance by the grantee will be presumed in the absence of proof to the contrary; but here there was an unequivocal assent and acceptance. This certainly amounted to a good delivery, and vested the title in the plaintiff.

Nor do we think the nonsuit can be sustained on the ground that it can be said as a matter of law that the premises had been occupied and held adversely to the plaintiff for more than twenty years prior to the commencement of the action. It is true, it clearly appears that Alexander McPherson entered into the possession of the premises immediately after the execution of the deed which was made through his procurement to the plaintiff; that he improved the land, built upon it, occupied the house as a homestead, paid taxes, and exercised acts of ownership over the property. But all these acts are entirely consistent with the idea that he was improving and holding the property for his brother. The character of the possession, and especially the intention with which it was commenced

and continued, are the facts to be regarded. The law upon this subject is thus clearly stated by Tyler, in his work on ejectment and adverse possession, p. 860: "The *quo animo* a possession is taken or held furnishes the true test of its character. . The possession, to be adverse, must be shown to have been hostile in its inception, or that, having been begun in consistency with the rightful title, its character has changed; but there must be adequate cause for the change, or for imputing it. When it commences under acknowledgment of the right owner's estate, the possession will retain its original quality through any succession of occupants of the land; and will be presumed to be in subservience to the rightful interest." (See Angell on Limitations, p. 385; 3 Washb. on Real Prop., pp. 123–127.) There is no clear and satisfactory evidence that Alexander entered into possession in hostility to the plaintiff, or that he denied the rights of the latter under the deed up to the time of his death. Certainly the evidence on this point is not sufficiently strong and conclusive to warrant the court in withdrawing from the jury the question of adverse possession. Whether Alexander repudiated and denied the rights of the plaintiff, and claimed the land as his own, or whether he intended his possession to inure to the benefit of the plaintiff, were questions which should have been submitted to the jury upon all the evidence. It might prejudice the rights of the parties were we to express any more decided opinion as to the effect of the testimony upon this point.

Another ground on which a nonsuit was asked, was, that it appeared that the consideration for the property was paid by Alexander McPherson, and that, though the deed was taken in the name of the plaintiff, still he is a mere naked trustee, having no interest in the land, and can not maintain ejectment to recover the possession. In the fourth subdivision of the answer, there is an equitable counterclaim setting up this resulting trust in favor of the defendants. A resulting trust arises whenever an estate is purchased in the name of one per-

son, and the consideration is paid by or comes from another. Under such circumstances, a trust was presumed from the nature of the transaction and the apparent equity of the case. 2 Story's Eq. Jur., § 1201. The conveyance in the present case was made in 1844, before the enactment of ch. 57, R. S. 1849; and possibly a resulting trust would arise, providing, it should appear that Alexander paid the consideration with his own money. But this is a question we shall express no defi· nite opinion on now, because we are unable to say what the fact was in regard to the payment of the consideration, whether the money really belonged to Alexander McPherson or not. There is testimony tending to show that the purchase of the tract in question was made with partnership funds, or for the joint benefit of the plaintiff and Alexander, who had been engaged together in the business of buying and selling cattle in Scotland before the latter immigrated to this country. This question, however, whether the plaintiff holds the title, as a mere trustee for the defendants, is a matter which will more properly arise on the trial of the equitable issue on the counterclaim. That issue has never been tried, but only the legal issues. In *Du Pont v. Davis*, 35 Wis., 631, an equitable defense was interposed to an action of ejectment; and this court held that the defendant was entitled to a trial of the equitable case, not as a defense merely, but as a counterclaim. And the chief justice states that the correct practice is to first try the equitable issue on the defendant's counterclaim, before the court, and afterward, the legal issue by a jury. This would have been the proper course to have pursued on the trial of these issues. Should the fact be established on the trial of the counterclaim, that Alexander McPherson purchased the land with his own money, the question whether the plaintiff does or does not hold as trustee for the heirs will arise and have to be determined. On the evidence as it stood when the nonsuit was granted, that important fact was left in doubt.

*By the Court.*—The judgment of nonsuit is reversed, and the

JANUARY TERM, 1875. 645

cause is remanded for a new trial in accordance with this opinion.