Herzing and others, Appellants, vs. Hess, Respondent.*

*March 31—May 5, 1953.*

* Motion for rehearing denied, with $25 costs, on July 3, 1953.

618

For the appellants there were briefs by *Murphy & Gavin,* attorneys, and *Kenneth M. Orchard* of counsel, all of Madison, and oral argument by *Mr. Stephen E. Gavin* and *Mr. Orchard.*

For the respondent there was a brief by *Hill, Miller & Hill* of Baraboo, and oral argument by *James H. Hill.*

BROADFOOT, J.   The sole question before us is whether or not the deed to Mabel Hess was ever delivered to her. Two principles of law are involved.  To constitute a valid delivery of a deed the grantor must intend delivery and part with dominion and control over it.  *Darling v. Williams,* 189 Wis. 487, 207 N. W. 255.  Possession of a deed by the grantee raises a presumption that it was delivered to her to take effect according to its terms at the time of its execution. *Chase v. Woodruff,* 133 Wis. 555, 113 N. W. 973.

The plaintiffs offered proof to show that Chris Herzing lived upon the premises described in the Hess deed from the date of its execution until the date of his death. He paid the real-estate taxes upon the property during all of that time. Neither the defendant nor his wife ever occupied the premises or asserted any rights to the property during Chris Herzing's lifetime. The attorney who drafted the will testified that Chris Herzing and the defendant came to his office in Richland Center sometime prior to May 3, 1949, and brought with them deeds and other documents relating to both farms. There was some confusion as to the exact description of a schoolsite and the attorney stated that he would have to check the records in order to get an exact description of the lands to be devised. The defendant was present at that time and also on the date of the execution of the will and took part in the discussions relating to the descriptions and other matters. At one of the conferences the subject of the 1941 deeds was discussed and Chris Herzing was advised that he could not devise the property if the deed to Mabel Hess had been delivered but could do so if the deed had not been delivered. Chris Herzing then stated that he had never delivered the deed to his son. The testator's statement as to the Hess deed is contained in the following testimony given by the attorney:

"He told me that he had made some deeds, and that he had had some papers in a box at Reedsburg with his daughter, Mabel Hess, and I informed him he couldn't make a will of this property if the deeds had been delivered, and he told me that his daughter was now deceased, and he wanted to make this division that he had told me about to his grandchildren, and I informed him that he could make the will if the deeds had not been delivered."

The defendant made no claim to the property under the deed during these conversations. The son, Carl Herzing, had no knowledge of the execution of the deed in which he was

named as grantee. The defendant, as executor, on October 16, 1950, removed the contents of a safety-deposit box in a bank in Richland Center which had been leased by Chris Herzing during his lifetime. No one else was present at the time. The defendant canceled the lease for the safety-deposit box and took the contents with him.

From this testimony the plaintiffs contend that there was no effective delivery of the deed to Mabel Hess; that the testimony negatives the intent of the grantor to relinquish control and pass title; that the presumption of delivery is not available to the defendant because there was a confidential relationship between Mabel Hess and her father; that there was no proof of acceptance of the deed by Mabel Hess; and that the defendant is estopped to deny Chris Herzing's claim of title at the time he executed his will.

The plaintiffs rely heavily on the case of *Stewart v. Stewart,* 50 Wis. 445, 7 N. W. 369. That case, an action for ejectment, was tried to the court and a jury. Under somewhat similar circumstances the jury found that there had been no delivery of a deed there in question. This court considered it as a question of fact and that there was credible evidence to sustain the finding. Had the jury found otherwise in that case the finding also would have been approved.

The only evidence advanced by the plaintiffs to support their contention that Mabel Hess occupied a confidential relationship to her father was that she knew about the deeds and that they shared a joint safety-deposit box in a bank at Reedsburg. That is insufficient to establish any fiduciary relationship.

The trial court answered the other questions as follows:

"It is true that in the case at bar Chris had the income and, of course, paid the taxes for three years after the deed was made before the daughter died. In the court's opinion this is not a persuasive factor. In *Chaudoir v. Witt,* 170 Wis. 556, we have a situation very similar to the case at bar

where it was contended that because the grantor had taken the income from the property the legal effect of the transaction was changed. The second headnote to that action is this:

" 'Neither the recovery of the grantor (from illness) and his use of the property as his own until he died many years later, nor the belief of both husband and wife that the title was in the husband, changes the legal effect of the transaction.'

"This case further holds that there cannot be a conditional delivery of a deed or delivery in escrow to a grantee. When so delivered it becomes absolute and divested of the supposed condition. See also *George Williams College v. Williams Bay,* 242 Wis. 311, 320. It would be the most natural thing for the father to do, namely, deliver the deed but retain the use of the property during his life. He was an old man and apparently had little property beyond the two farms in question. In any event in the court's judgment it is not sufficient of itself to rebut the *prima facie* presumption of delivery by virtue of its being during the years in question in the daughter's possession. During nearly all of this time the testator, Chris, had a lockbox either in a Reedsburg bank, near where he lived, or a Richland Center bank. Why would he ask his daughter to keep the deed for safekeeping as inferentially contended by the plaintiffs? His other valuable papers were in the lockbox and yet from the date of the making of the deeds until the daughter died she had the absolute control of the deed and could have recorded it at any time. The reason why, under all of these circumstances, the deed was allowed to remain in Mabel's exclusive possession for all these years until her death can be explained, in the court's opinion, only on the hypothesis that it was delivered to Mabel with intent to pass title. What agreement she may have had with her father with reference to recording it, if any, is undisclosed. However, it was not recorded but could have been. There is no evidence that Chris Herzing ever asked for possession of the deed either from Mabel or, after her death, from Mabel's husband. If there was some condition annexed to the delivery it becomes immaterial. In *Lowber v. Connit,* 36 Wis. 176, it was said that if a grantor of land does not intend his deed to take effect until some condition is per-

formed he must keep it himself or leave it in escrow with a stranger and not deliver it to the grantee. See also *Rogers v. Rogers,* 53 Wis. 36; *Hamlin v. Hamlin* (N. Y.), 84 N. E. 805; 18 C. J., p. 211.

"When the deed was given to Mabel did the grantor intend to pass title? This must be determined from the evidence. *Steuerwald v. Steuerwald,* 195 Wis. 589. The court believes and finds from the evidence that he did so intend.

"Contention is made that the fact that the father when he made the will in Mr. Black's office on the 3d of May, 1949, must have been of the opinion, at least, that he owned the property for he stated, about the time of signing, to his housekeeper, Mrs. Wright, that he had to make a will as the deed to Mabel was no good. Apparently nothing was said as to Carl's deed being no good. It is also significant that the testator willed to Carl the identical property which he had conveyed to him by the deed. It was the land he had conveyed to Mabel that was divided up between grandchildren and others by terms of the will. The testator very evidently thought, as he stated to Mrs. Wright, that the deed was no good—perhaps because it had not been recorded prior to his death.

"It has been held that if a deed is executed and delivered with intent to pass title, it must so operate, although both parties supposed that it would not take effect until recorded and also supposed that while unrecorded the grantor might control or revoke it. *Hinchliff v. Hinman,* 18 Wis. *130; *Chaudoir v. Witt,* 170 Wis. 556, 563; *Traber v. Radke,* 220 Wis. 359, 364. Now, the fact that this old gentleman, ninety years of age, might have been under the impression that because Mabel had died the deed was no good or under the impression that he still had some interest in the property is immaterial if, in fact, he had delivered the deed to Mabel with intent to pass title. *Traber v. Radke, supra.*

"The court feels there is absolutely no estoppel against the defendant in this matter. He states unequivocally, and there is nothing to impeach it in any way, that he could not find the deed after Mabel's death, although he diligently searched for it, and concluded that something had happened so that possibly the father still owned the property. In any event, the court does not feel it is a case where the husband had to

make an election. The cases cited holding that where a person takes under a will and under a deed from the same grantor, the two being inconsistent, that he must make an election are not applicable. In this case if the defendant owns the property he owns it as heir of his wife and does not take directly under any instrument from the deceased father. In any event he showed his good faith by telling the appraisers and the attorney that he had found this deed when they arranged for the appraisal on October 23, 1950, and resigned as executor upon the advice of the attorney for the estate.

"There is only one thing in this case that has caused the court any concern and that is with reference to the deed to Carl Herzing. Why was that in the daughter's possession? If the daughter had lived this might be easily cleared up. It seems to the court a reasonable conclusion from all the facts that there was some understanding between Chris, the testator, and his daughter Mabel about the recording of these deeds but unfortunately Mabel died before they had been recorded. In any event the court does not feel that this unexplained presence of Carl's deed in Mabel's safe, in view of all the other facts and circumstances, is sufficient to impeach the integrity of the *prima facie* presumption created by Mabel dying with the deed in her possession when considered with all the other facts and circumstances shown by the evidence. This presumption must be rebutted by clear and satisfactory evidence. See *Giblin v. Giblin,* 173 Wis. 632, 636. It easily could be an escrow as to Carl and absolute under the law as to Mabel.

"The court, therefore, concludes that the action of the plaintiffs must fall."

The defendant testified that on the date of the execution of the deeds Mabel Hess had both of said deeds in her possession at the Hess home in Reedsburg, Wisconsin. He testified that his wife showed them to him, read them to him, and then put them away in another part of the house. He stated that he was familiar with the property described in the deeds and recognized the descriptions. He testified also that in January, 1943, his wife brought the deeds into the kitchen

of their home and he saw them in her possession.  He did not know just where his wife kept the deeds, and he made a search for them after her death but did not find them. They had a small safe in their home at Reedsburg and he had looked carefully through a lockbox in the safe but did not search every document in other compartments thereof. He stated that in March, 1950, he was looking for a wedding certificate and at that time carefully checked the contents of the safe, and that the deeds were then in a composition book she had used as a diary and for records during her lifetime.

From the evidence it appears that the defendant had a substantial financial interest in the outcome of the case and that he had an opportunity to take the deeds from among the testator's documents.  However, there is no testimony that they were with the deeds and papers produced by the testator at the time of the drafting and execution of his will. At best this testimony only affects the credibility of the testimony given by the defendant.  The trial court was not only the trier of the facts but the sole judge of the credibility of the witnesses.

This is a fact case.  Unless the findings are against the great weight and clear preponderance of the evidence we cannot disturb them, and clearly there is ample evidence to support the trial court's determination.

*By the Court.*—Judgment affirmed.